FILED
2014 Apr-18 PM 04:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RACHELLIE TAYLOR,<br><br>Plaintiff,<br><br>v.<br><br>FAURECIA AUTOMOTIVE SEATING, INC.,<br><br>Defendant. | } | CIVIL ACTION NO.<br>14-AR-0277-S |

**MEMORANDUM OPINION AND ORDER**

On April 8, 2014, this court conducted a hearing on the motion of defendant, Faurecia Automotive Seating, Inc. ("Faurecia"), to transfer the above-entitled case filed by plaintiff, Rachellie Taylor ("Taylor"), in the Southern Division of the Northern District of Alabama to the Western Division of the Northern District of Alabama. The question presented is which of these two divisions within the Northern District of Alabama is both a proper forum and the better forum of the two.

Taylor complains of several violations by Faurecia, her employer, of federal employment discrimination statutes, including Title VII. She appends several claims based on Alabama tort law.

Taylor resides in Hale County, which is not located within the Northern District of Alabama, but, rather, is located in the Southern District of Alabama. All of the events about which Taylor complains took place within the Western Division of the Northern District of Alabama at the manufacturing facility of Faurecia,

which is a supplier of materials to Mercedes-Benz, the operator of a large automotive manufacturing plant also located within the Western Division. The Northern District of Alabama is comprised of thirty-one counties and is divided into seven divisions. A map of the Northern District, showing its seven divisions, is attached to this opinion. Juries for trials in the Western Division are drawn from the Western Division and the Jasper Division. The ten counties in these combined divisions from which such juries are drawn are: Marion, Winston, Walker, Fayette, Lamar, Pickens, Tuscaloosa, Bibb, Greene, and Sumter. Jurors for trials in the Southern Division are drawn from the Southern Division, which is comprised of three counties: Blount, Jefferson, and Shelby. All trials in the Western Division are held in Tuscaloosa. All trials in the Southern Division are held in Birmingham.

While it is possible that a majority of the Mercedes-Benz workforce resides in the Western Division, it only takes logical deduction (and no empirical study) to reach the conclusion that a significant portion of the Mercedes-Benz workforce lives outside the Western Division, particularly, in Jefferson County and Shelby County, both of which counties are contiguous to Tuscaloosa County, and are within easy traveling distance of the Mercedes-Benz plant. It is impossible to predict with any degree of certainty the percentage of a *venire* summonsed for jury service in Tuscaloosa, as compared to a *venire* called to serve on a Southern Division jury in

Birmingham who would be employed by, or have a family member employed by, Mercedes-Benz. For aught appearing, there would be as many potential jurors with a Mercedes-Benz connection in the Southern Division as in the combined Western and Jasper Divisions. And, there is no reason to believe that persons in the Southern Division are any less likely to like or to dislike Mercedes-Benz as persons residing in the combined Western and Jasper Divisions.

The fact that counsel for Taylor and counsel for Faurecia both have their law offices in Birmingham is not a factor that can influence, much less answer the question of the relative convenience or inconvenience in this case. The convenience to counsel for one or both parties is to be given little or no weight in a *forum non conveniens* analysis. *See In re Volkswagen A.G.*, 371 F.3d 301, 202-206 (5th Cir. 2004). In this case, traveling to Tuscaloosa from Birmingham for both sets of counsel is equally inconvenient.

The parties have not tried to shove *Bishop v. C & P Trucking Co.*, 840 F.Supp.118 (N.D. Ala. 1993), down this court's throat. *Bishop* would be persuasive except for the drastic change in the scenery in the Northern District's jury selection process that has taken place since 1993. When this court decided *Bishop*, jurors for **all** trials in **all** seven divisions within the Northern District were randomly drawn from **all** thirty-one Northern District counties as a whole, without regard to the division where the trial was set. In

other words, when *Bishop* was decided, a litigant in the Western Division was just as likely to be called upon to *voir dire* a juror from Huntsville (in the Northeastern Division) as a prospective juror from Tuscaloosa (in the Western Division). This explains why this court in 1993 held that venue was proper in any division within the Northern District. Whether or not this court was correct in 1993 when it eliminated the concept of divisional venue in the Northern District, the court cannot reach the same conclusion in 2014, because jurors are no longer selected as they were in 1993. Taylor either was unaware of *Bishop* or knew that *Bishop* does not fit the current facts. *Bishop* no longer has significance except, perhaps, for some of this court's observations that have now been reduced to *dicta*.

Taylor begins her argument for venue in the Southern Division with the contention that the general venue factors listed in 28 U.S.C. § 1391 do not apply here, because 42 U.S.C. § 2000e-5(f)(3) allows her to file her complaint, brought under Title VII, "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed." As reflected in the attached map, the state of Alabama has three federal judicial districts, the Northern, the Middle, and the Southern. Taylor lives in the Southern District with its main courthouse in Mobile. She clearly could have filed her complaint in the Southern District pursuant to this specialized venue statute designed especially for

employment discrimination cases. She chose, however, to file in the Northern District. This court respectfully disagrees with Taylor's expansive assertion that the above-referenced specialized venue statute allowed her to pick a particular division within an appropriate district and thus to lock in place her chosen venue. This does not mean, of course, that her picking the Southern Division of the Northern District was a jurisdictional mistake. It was not. This court does not have to express itself on what a Southern District judge should have done if Taylor had filed in the division of the Southern District farthest from the Western Division of the Northern District.

The only fact that arguably could make the Southern Division of the Northern District a more physically convenient forum than the Western Division is that the lawyers for both parties have their offices in the Southern Division. As previously stated, this is not a legitimate factor.

The general venue statute, 28 U.S.C. § 1391, if applied to the undisputed facts in this case, would exclude the Southern Division from consideration and would designate the Western Division as the appropriate forum. Why? (1) The defendant has its place of business in the Western Division; (2) all of the operative events took place in the Western Division; (3) all of the pertinent records are located in the Western Division; and (4) all witnesses, except for the plaintiff herself, reside in the Western Division.

These facts narrow the focus of the inquiry to two factors, both raised by plaintiff: (1) does the "interest of justice" call for venue in the Southern Division? and (2) what is the significance of plaintiff's choice of forum?

The court could not *sua sponte* have transferred this case to the Western Division, because venue is not "wrong" in the Southern Division. If it were "wrong", 28 U.S.C. § 1406(a) would be the applicable transfer authority. In this case, the movant must meet the standards not of 28 U.S.C. § 1406(a), but of 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Taylor concedes, of course, that her action could have been brought in the Western Division. Although the "parties and witnesses" might not be sorely inconvenienced by having to travel to Birmingham instead of to Tuscaloosa, Faurecia would obviously suffer significant inconvenience if forced to come to Birmingham. **There will be no physical inconvenience to either party if the case is tried in Tuscaloosa.**

The relative physical convenience question is not where Taylor places her emphasis. She contends that the case should not be transferred to the Western Division "in the interest of justice". In her affidavit submitted in opposition to Faurecia's motion to transfer, Taylor says, *inter alia*:

> I believe that I would face a **hostile court and jury** if I brought my complaint in the Western Division.
>
> * * * * *
>
> Defendant is a large employer in Tuscaloosa, Alabama, and **I do not believe that I would receive a fair trial** if I filed my case in the Western Division.

(emphasis added).

During the oral hearing on defendant's transfer motion, Taylor's counsel informed the court that it was a mere inadvertence by their client when she swore that she believed she would face a "hostile **court**" in the Western Division. They assured this court that Taylor did not truly believe that any judge assigned to the Western Division would be unfair to her. Taylor's counsel, however, did not retreat from the belief, which they shared with their client, that she could not get a "fair **trial**" in the Western Division. Counsel urged the probability that Western and Jasper Division jurors would operate under the influence of Mercedes-Benz and Faurecia. This court cannot, of course, prevent Taylor and her counsel from believing what they believe, but this court cannot join them in believing for an instant that she cannot receive a fair trial in the Western Division. This court is flattered by Taylor's implied belief that she can get a fair trial in this court, but this court cannot shake the universal presumption that trials will proceed fairly in any federal forum in which venue is proper. Venue is as proper in the Western Division as it is in the Southern Division, and there is no evidence to overcome the

presumption enunciated in *Chicago, R.I. & P.R. Co. v. Igoe*, 212 F.2d 378 (7th Cir. 1954); *Chance v. E.I. DuPont*, 371 F.Supp. 439 (E.D.N.Y. 1974); and *Patterson v. Louisville & NR Co.*, 182 F.Supp. 95 (S.D.Ind. 1960). This is not a case in which serious pretrial publicity can be anticipated, as it might be, for instance, if Taylor were suing the University of Alabama or the City of Tuscaloosa. There is absolutely no evidence to suggest that Mercedes-Benz or Faurecia exercises undue influence over prospective jurors in the Western and Jasper Divisions. Taylor therefore fails in her attempt to prove that a transfer to the Western Division would be against the interest of justice.

This leaves the court with the obligation to consider Taylor's only remaining argument, namely, the presumption in favor of the forum selected by plaintiff. While it is true that as a general rule a plaintiff's choice of forum is given a significant weight, that deference to plaintiff's choice can be over-weighed by other factors if they weigh heavily in favor of a transfer. Professor Moore's treatise describes a fact that in deciding venue significantly subtracts from Taylor's argument. Professor Moore says: "**{T}he plaintiff's choice of forum is accorded less weight if [the chosen forum] is not the plaintiff's residence.**" 2 *Moore's Federal Practice*, § 111.13[1][c][ii] (Matthew Bender 3d Ed.). (emphasis added). In the instant case, Taylor is neither a resident of the Southern Division, nor of the Western Division.

She is a resident of the Southern District in Hale County, next door to the Western Division of the Northern District. It is clear that it will be more physically convenient for plaintiff and for defendant to try this case in Tuscaloosa than in Birmingham. Plaintiff's choice of the Southern Division as a forum, while not insignificant, is materially diminished as a factor because of her personal residence. In this court's balancing of all factors, her choice is overridden by the combination of the other factors.

**Conclusion**

Because the court finds that under the overall circumstances in this case, Faurecia has met its burden of proving that the better forum is the Western Division, this court, in an exercise of its considerable discretion, will order, and does hereby ORDER, that the case be transferred to the Western Division. The Clerk shall effectuate this order.

DONE this 18th day of April, 2014.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE